# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JAMES B. JENKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-04-432-WH |
| | ) | |
| JO ANNE B. BARNHART, | ) | FILED |
| Commissioner of the Social Security | ) | |
| Administration, | ) | JAN 1 3 2006 |
| | ) | |
| Defendant. | ) | WILLIAM ... E<br>Clerk, U.S. District Court<br>By:_____<br>Deputy Clerk |

## FINDINGS AND RECOMMENDATIONS

The claimant, James B. Jenkins, pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability benefits under the Social Security Act. The claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred, because the ALJ incorrectly determined he was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment..." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy . . ." Id. § 423 (d)(2)(A). Social security regulations implement a five-step

sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

---

[1] Step one requires claimant to establish he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that claimant establish he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See id.* §§ 404.1521, 416.921. If claimant is engaged in substantial gainful activity (step one) or if claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity (RFC) to perform his past relevant work. If claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which claimant–taking into account his age, education, work experience, and RFC–can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

## Claimant's Background

The claimant was born on September 29, 1953, and was 49 years old at the time of the hearing before the ALJ. He has a GED and previously worked as a tractor-trailer truck driver, roustabout, construction worker, automotive mechanic, and diesel mechanic. The claimant alleges disability as of October 16, 2001, because of lower back and hip pain, depression, and emphysema. The claimant retained insured status through March 31, 2002.

## Procedural History

On April 30, 2002, the claimant filed an application for benefits under Title II (42 U.S.C.§ 401 *et seq.*). The application was denied in its entirety initially and on reconsideration. A hearing was held on April 2, 2003, before ALJ Eleanor Moser in Ada, Oklahoma. By decision dated July 15, 2003, the ALJ found the claimant was not disabled at any time through the date of the decision. On July 30, 2004, the Appeals Council denied review of the ALJ's findings. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential process. She determined the claimant had the residual functional capacity ("RFC") to lift up to 15 pounds occasionally and ten pounds frequently, stand and walk for up to six hours in an eight-hour workday or mostly sit, use his arms and hands to grasp and hold objects, and is moderately restricted in pushing and pulling. The claimant also is limited to no stooping, crouching, kneeling, or crawling, and should avoid jobs involving chemicals, dusts, and fumes. The claimant's contact with supervisors, co-workers, and the public is limited to superficial contact, such as meeting, greeting, making change, and giving simple instructions or directions (Tr. 31). The ALJ concluded that the claimant was not disabled, as there was work in the regional and

national economy he could perform, *e.g.*, cashier or ticket taker, fishing reel assembler, food and beverage order clerk, and hand suture winder (Tr. 35).

## Review

The claimant asserts that the ALJ erred: (i) by failing to recognize all of his diagnosed impairments as severe; (ii) by failing to include all of his physical limitations in the RFC determination; and, (iii) by improperly analyzing his credibility. The undersigned Magistrate Judge finds that none of these contentions has merit.

The claimant first contends that the ALJ erred in finding that his hearing loss was not a severe impairment. According to the claimant, the medical evidence supports a finding that his hearing loss was severe and satisfied the *de minimus* standard required by step two. Specifically, the claimant refers to objective findings from Dr. Charles Vest, M.D., indicating the claimant suffered from bilateral high frequency sensorineural hearing loss. He contends the ALJ rejected the findings by Dr. Vest without providing specific, legitimate reasons as required by the treating physician rule.

The record shows the claimant did not specifically complain about hearing loss on documents he completed during the application and reconsideration processes for obtaining benefits, but he did indicate in several documents that he was experiencing tinnitus (Tr. 159, 174, 179). The claimant was examined by Dr. Vest on February 2, 2003. He complained of longstanding tinnitus bilaterally and felt it had been getting worse over the past month. The claimant reported positive noise exposure from working in construction and attending drag races. Dr. Vest found the claimant's canals, drums, nose, and oral cavity and oropharynx were normal and assessed the claimant with tinnitus probably secondary to sensorineural hearing loss. He determined the claimant had bilateral high frequency sensorineural hearing loss which was symmetrical, and he recommended binaural amplification if the claimant

desired, but the claimant did not. The claimant indicated he would return in four to six months for a repeat audiogram and would practice ear protection in the interim (Tr. 31, 460).

A claimant has the burden of proof at step two of the sequential analysis to show that he has an impairment which is severe enough to interfere with the ability to work. *Bowen v. Yuckert*, 482 U.S. 137 (1987). The determination is "based on medical factors alone, and 'does not include consideration of such vocational factors as age, education, and work experience.'" *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004), *quoting Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). Although a claimant "must show more than the mere presence of a condition or ailment[,]" *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997), the claimant's step-two burden only requires a "de minimis" showing of impairment. *Hawkins*, 113 F.3d at 1169. A finding of non-severity may be made only when the medical evidence establishes a slight abnormality or a combination of slight abnormalities which would not have any more than a minimal effect on an individual's ability to work. *Hinkle*, 132 F.3d at 1352.

The ALJ discussed the pertinent evidence and noted that when the claimant was offered binaural amplification, the claimant indicated he was not interested in the treatment (Tr. 31). Dr. Vest was a physician to whom the claimant's treating physician referred him for further testing. He only examined the claimant on one occasion and made no mention of how the claimant's hearing loss would affect his ability to work. Although step two only requires a "de minimis" showing of impairment, the burden of making such a showing is on the claimant. In this instance, when offered treatment the claimant not only refused it, but he also did not complain at the administrative hearing in April 2003 of any problems from his hearing loss, and he failed to show how such an impairment would more than minimally affect his ability to work. *See Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003)

(holding that the mere presence of a condition, without proof that the condition limits basic work activities, is insufficient for a step-two showing). Therefore, the ALJ's conclusion that the claimant does not suffer from a severe hearing impairment is supported by substantial evidence.

The claimant next asserts that the ALJ failed to include all of his physical limitations in the RFC determination and that the ALJ should have further restricted his ability to stand, walk, and sit. Specifically, the claimant maintains that the ALJ failed to discuss the weight given to the following opinions: (i) Dr. Gary Paddack's recommendation that the claimant undergo psychiatric treatment, his prescription of antidepressant medication to the claimant, and his diagnosing the claimant with COPD; (ii) Dr. W.F. Starns, Jr.'s, finding that the claimant's back pain was aggravated by sitting for long periods and that claimant could only sit for two to three hours at a time; (iii) Dr. Michael Carl's opinion that the claimant could perform no lifting, pulling, pushing, or carrying greater than five pounds and no repetitive bending or stooping; and, (iv) Dr. James P. Metcalf's opinion that the claimant's pain was aggravated by bending, stooping, lifting, twisting, turning, prolonged sitting, standing, and walking.

The record reveals the claimant was seen by Dr. Paddack on several occasions between September 1999 and July 2002. At his first visit with Dr. Paddack in September 1999, the claimant complained of being nervous and feeling "knotted up." Dr. Paddack assessed the claimant with anxiety (though he noted he could not find anything grossly physically wrong) and prescribed him Zoloft (Tr. 393). By his October 1999 appointment, the claimant felt much better and claimed to feel almost normal. His depression was assessed as improved and it was recommended he continue taking Zoloft (Tr. 30, 392). The claimant

was admitted to the hospital for shortness of breath and chest pain in November 2001. He underwent a pulmonary function analysis that showed the presence of a severe obstructive lung defect (Tr. 29, 390-91). Dr. Paddack diagnosed the claimant with COPD, but he indicated in progress notes that the claimant's numbers looked worse than they really were. The claimant's catheterization was essentially normal (Tr. 29, 387-97). In his hospital discharge summary of the claimant, Dr. Paddack asked the claimant to refrain from smoking or from being around smoke or other pulmonary irritants such as paint. He noted the claimant could resume normal activities and prescribed the claimant Atarax, Advair, and Flonase (Tr. 29-30, 249-50). In December 2001 Dr. Paddack found the claimant's lungs were clear to auscultation and that he had a regular heart rate and rhythm (Tr. 29, 389). By January 2002 Dr. Paddack noted the claimant's breathing was better although he still had occasional shortness of breath and wheezing. The claimant complained of feeling depressed again, so Dr. Paddack increased his dosage of Zoloft. He offered to refer the claimant to a psychiatrist, but the claimant was not interested. In April 2002, however, Dr. Paddack referred the claimant to Dr. Bayne for a psychiatric examination. The claimant was seen by Dr. Bayne and reported to Dr. Paddack in July 2002 that Dr. Bayne had discontinued Zoloft and placed him on Nortriptyline, which was making him feel better (Tr. 30, 387-97).

The claimant was seen by Dr. Starns, a chiropractor, from March 2001 through April 2001. As a result of his examinations of the claimant, he determined the claimant suffered from lower back pain ranging from a ten in March 2001 to a three in April 2001 (Tr. 281-92). On April 26, 2001, Dr. Starns indicated the claimant should be able to return to a full-day work shift by May 5, 2001 (Tr. 279). Dr. Starns completed a letter on the claimant's behalf in January 2002. He noted that sitting for prolonged periods caused the claimant lower back pain, although he was able to sit for two to three hours driving comfortably. The claimant's

mental processes were intact and he could walk, lift, and carry objects for a short distance. According to Dr. Starns, since his April 2001 examination, the claimant had not returned for further treatment for his back (Tr. 277).

The record reveals that the claimant was first seen by Dr. Carl in June 2001. He assessed the claimant with lumbar degenerative disc disease, left lumbar radicular pain, and lumbosacral mechanical dysfunction. He released the claimant to light duty with temporary work restrictions to include no lifting, pushing or pulling of more than 20 pounds and no crawling, kneeling, squatting, climbing, bending, or stooping. If work with these restrictions was unavailable, the claimant was to be considered temporary totally disabled (Tr. 428-29). The claimant received epidural steroid injections from Dr. Carl in July and August 2001 and was found to be at maximum medical improvement and released with the same work restrictions (Tr. 28-29, 422-27). The claimant re-injured his back in October 2001 and returned to Dr. Carl in January 2002. He assessed the claimant with lumbar degenerative disc disease with left L5 radiculopathy and recommended an epidural injection with corticosteroid and physical therapy upon completion of the injection. He placed temporary work restrictions on the claimant, including lifting and pushing or pulling of only five pounds and no stooping or bending (Tr. 30, 418-19). The claimant was seen on at least a monthly basis by Dr. Carl from February 2002 through April 2002 and received two epidural steroid injections and continued to participate in physical therapy during this time period. His work restrictions remained the same (Tr. 30, 410-17). At his April 2002 appointment, Dr. Carl referred the claimant to Dr. Arthur Conley, M.D., for a surgical consultation (Tr. 410). Dr. Conley assessed the claimant with lumbar discogenic back pain without significant radiculopathy and referred him back to Dr. Carl for a discogram to try and isolate his pain generator to one or two levels (Tr. 31, 406-07). The claimant's discogram was performed

by Dr. Carl in June 2002 and severely degenerative and severely painful intervertebral discs were found at L3-4, L4-5, and L5-S1. Because of the occurrence of discogenically mediated pain at three levels, no further testing was performed (Tr. 31, 404-05). The claimant returned to Dr. Conley for follow-up care in July 2002. He noted no acute motor or sensory deficit, although the claimant still exhibited guarding and spinal pelvic dysrhythmia. Straight leg raising was negative, but his range of motion was markedly decreased. Dr. Conley concluded that in his opinion, the claimant was a poor candidate for fusion surgery (Tr. 31, 403). The claimant returned to Dr. Carl in August 2002, and Dr. Carl referred him to physical therapy for a formal work hardening program. The claimant continued to have temporary work restrictions of no lifting, pulling, pushing or carrying of greater than five pounds and no repetitive bending or stooping (Tr. 31, 401-02). The claimant returned for his last appointment with Dr. Carl in September 2002. Dr. Carl noted the claimant had completed the work hardening program and had tolerated it well, even though he became fatigued during the last week of the program. He released the claimant with permanent work restrictions of no lifting, carrying, pushing, or pulling greater than 15 pounds and no repetitive bending or stooping (Tr. 31, 399-400).

Dr. Metcalf only examined the claimant on one occasion, October 3, 2001, for purposes of his workers' compensation action. He noted that the claimant suffered pain in the lower back that was reportedly aggravated by bending, stooping, lifting, twisting, turning, prolonged sitting, standing, and walking. The claimant had difficulty sleeping, morning stiffness, and could not participate in any sports activities. Upon physical examination, the claimant's deep tendon reflexes were equal and his sensory function was normal. There was a positive Laseque's sign on the left and straight leg raising was positive at 40 degrees on the right and 30 degrees on the left. An X ray of the lumbar spine revealed some end plate

spurring. Dr. Metcalf assessed the claimant with a sprain of the lumbar spine and assigned the claimant with an 18 percent whole person impairment rating (Tr. 29, 200-01).

The ALJ fully summarized the evidence in the decision. With regard to the claimant's depression and COPD, Dr. Paddack did not assign the claimant with any specific functional limitations based on these conditions, but the ALJ still found these impairments to be severe at step two and included limitations related to the conditions in the RFC. When the claimant was discharged from the hospital in November 2001, Dr. Paddack advised him he should refrain from contact with smoke and other pulmonary irritants (Tr. 249-50), and based on this, the ALJ included limitations in the RFC determination that the claimant avoid work involving chemicals, dusts, and fumes. The ALJ also included limitations related to the claimant's depression in the RFC determination. The claimant was limited to superficial contact with supervisors, co-workers, and the public, such as meeting, greeting, making change, and giving simple instructions or directions. Contrary to the claimant's argument, the ALJ clearly took the claimant's COPD and depression into consideration and included limitations from these severe impairments in the RFC determination.

The ALJ also fully discussed the opinions of the claimant's treating physician Dr. Carl and: (i) afforded controlling weight to the permanent functional restrictions he placed on the claimant in September 2002; and, (ii) included the limitations that the claimant not lift, carry, push or pull more than 15 pounds and perform no repetitive bending or stooping in the RFC determination. Although Dr. Carl did assign temporary restrictions limiting the claimant to no lifting, carrying, and pushing or pulling in excess of five pounds prior to the assignment of permanent restrictions, there is no evidence in the record (other than unsupported assertions by the claimant) that Dr. Carl's less stringent permanent restrictions were the result of some sort of typographical error.

Further, Dr. Carl did not include any restrictions on the claimant's ability to stand, walk, or sit. The only evidence in this regard came from the claimant's chiropractor Dr. Starns and from the claimant's workers' compensation physician Dr. Metcalf, and consisted only of statements based on the claimant's subjective complaints. *See Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (noting that subjective allegations of pain are insufficient by themselves to establish disability). Dr. Starns only saw the claimant on a few occasions during March and April 2001 and indicated in a letter written in January 2002 that sitting for lengthy periods caused the claimant lower back pain and that when he returned to work he was able to sit for two to three hours driving comfortably (Tr. 277). Dr. Starns never imposed any specific restrictions on the claimant's ability to sit during his treatment of the claimant in March and April 2001 or in his letter from January 2002. In any event, the ALJ was free "to determine what weight to give [Dr. Starns's] opinion based on all the evidence before [her,]" *St. Clair v. Apfel*, 2000 WL 663958, *3 (10th Cir. May 22, 2000) [unpublished opinion], *citing Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997), and was not required to analyze it under the "treating physician rule." *See id.* at *3 ("Chiropractors are not included in the list of 'acceptable medical sources.' Rather, they are included as an example of an 'other source' in § 404.1513(e).") *See also Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000) (noting chiropractors are excluded from the list of acceptable medical sources and their opinions are not entitled to the same weight as that of other physicians). Dr. Metcalf, who examined the claimant only once and was therefore not a treating physician, *see Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003) ("A physician's opinion is deemed entitled to special weight as that of a 'treating source' when he has seen the claimant 'a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment[.]'"), *quoting* 20 C.F.R. § 404.1527(d)(2), did not find that the

claimant had functional limitations for standing, walking, or sitting, but only stated in his report what the claimant reported to him, *i. e.*, that the pain in his lower back was aggravated by bending, stooping, lifting, twisting, turning, prolonged sitting, standing, and walking. After reviewing all this evidence, the ALJ chose to give the opinion of the claimant's treating physician Dr. Carl controlling weight and included his restrictions, which did not include limitations for standing, walking, or sitting, in the RFC determination.

The ALJ determined that the claimant had the RFC to lift up to 15 pounds occasionally and ten pounds frequently, stand and walk for up to six hours in an eight-hour workday or mostly sit, use his arms and hands to grasp and hold objects, and was moderately limited in pushing and pulling. The claimant could perform no stooping, crouching, kneeling, or crawling and was to avoid jobs with exposure to chemicals, dusts, and fumes. His contact with supervisors, co-workers, and the public was limited to superficial contact, such as meeting, greeting, making change, and giving simple instructions or directions (Tr. 31). The ALJ's determination is supported by substantial evidence, and the Court therefore finds that the claimant's second contention is without merit.

The claimant's final contention is that the ALJ improperly analyzed his credibility, *i. e.*, that he rejected the claimant's subjective complaints by using boilerplate conclusions and by failing to provide specific reasons for the credibility determination. However, deference must be given to an ALJ's determination on claimant's credibility unless there is an indication that the ALJ misread the medical evidence when evaluated as a whole. *Casias*, 933 F.2d at 801. In assessing claimant's complaints of pain, an ALJ may disregard subjective complaints if unsupported by any clinical findings. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987). These credibility findings should be closely and affirmatively linked to the evidence and not just a conclusion in the guise of findings. *Kepler v. Chater*, 68 F.3d

387, 391 (10th Cir. 1995). "[T]he evaluation must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Ruling 96-7p, 1996 WL 374186, *4.

The ALJ thoroughly analyzed the claimant's credibility. In an initial Disability Supplemental Interview Outline, the claimant indicated that during a typical day he takes medication for his back as necessary, reads, watches television, listens to the radio, and walks for exercise occasionally. He gets along well with his wife, but he rarely visits friends or relatives because he is unable to get comfortable in strange places. The claimant can care for his personal needs, except he sometimes needs help from his wife putting on his socks and has to lie down to put on his pants. Although it takes him up to one hour to do so, he prepares all meals on a daily basis. He does some housework such as wiping off the table, doing laundry, vacuuming, and cleaning ashes from his wood stove. These activities take two hours for him to complete, but he does them with no assistance from others. He shops for groceries one or twice per month for approximately one hour per outing. The claimant is able to drive (Tr. 32, 115-20). In a subsequent Disability Supplemental Interview Outline, the claimant reported that he sits around the house during the day and sometimes plays with his dogs, watches the local news and weather, sits on the porch, and takes long naps related to side effects from his medications. The claimant has trouble sleeping at night because he is uncomfortable and has frequent nightmares. He is generally irritated and no longer gets along with his wife or others. The claimant has no interest in performing household chores and only visits with others approximately one hour per week (Tr. 32-33, 152-57). In a June 2002 Pain Questionnaire, the claimant indicated he tries to mow his lawn for five minutes at a time and then rests for 20 minutes and walks for five minutes at a time. The claimant

also claims to suffer from manic depression and paranoia, although the ALJ noted that the medical records do not show the claimant was ever diagnosed with these conditions (Tr. 33, 158-59).

The ALJ reviewed all of the foregoing and discussed the numerous medications the claimant takes for his conditions and the various side effects he claims to suffer as a result. These side effects include drowsiness, sensitivity to sun, rashes, tiredness, urine retention, blurred vision, dizziness, extreme loss of coordination, nightmares, stomach upset, constipation, headaches, dry mouth, extreme sweating, irregular appetite problems, irregular weight losses and gains, change in blood pressure, red eyes upon rubbing them, easy bruising, vomiting with rashes and hives, vision changes, extreme and constant itching, hallucinations every night, heartburn, ringing of the ears, and chest pains. The ALJ noted that none of the progress notes from the claimant's physicians document any of the side effects indicated by the claimant from his medications. Although the claimant was seen for ringing in his ears, the problem was related to hearing loss and not a side effect from medication. The ALJ further mentioned that the claimant's treating physician Dr. Carl had limited the amount of weight the claimant could lift and/or carry, but he did not impose restrictions on the claimant's ability to sit, stand, or walk. In fact, the ALJ noted that no other treating physician had limited any of the claimant's abilities to perform work (Tr. 33).

As the foregoing discussion demonstrates, the ALJ linked his determination as to the claimant's credibility to specific evidence as required by *Kepler* and provided specific reasons for the determination pursuant to *Hardman*. There is no indication that the ALJ misread the medical evidence as a whole, so her credibility determination is entitled to deference. *See Casias,* 933 F.2d at 801. The undersigned Magistrate Judge therefore concludes that the claimant's contention is without merit.

## Conclusion

The Magistrate Judge FINDS that correct legal standards were applied and that the decision of the Commissioner is supported by substantial evidence, and therefore RECOMMENDS that the ruling of the Commissioner of Social Security Administration be AFFIRMED. Parties are herewith given ten (10) days from the date of this service to file with the Clerk of the Court any objections with supporting brief. Failure to object to the Findings and Recommendations within ten (10) days will preclude appellate review of the judgment of the District Court based on such findings.

DATED this _13th_ day of January, 2006.

STEVEN P. SHREDER
**UNITED STATES MAGISTRATE JUDGE**